**Leatha Benita SIMS, by her next friend and mother, Linda Gail Sims, Plaintiff-Appellant,**

v.

**William WALN and Max Launder, Defendants-Appellees.**

No. 75–1383.

United States Court of Appeals, Sixth Circuit.

Argued Dec. 5, 1975.

Decided June 15, 1976.

Clyde Ellis, American Civ. Liberties Union, Stanley K. Laughlin, Jr., Columbus, Ohio, for plaintiff-appellant.

William J. Brown, Atty. Gen., Richard J. Dickinson, Asst. Atty. Gen., Columbus, Ohio, for amicus curiae.

William H. Thornburgh, Dayton, Ohio, Alfred J. Weisbrod, Troy, Ohio, for defendants-appellees.

Before CELEBREZZE, LIVELY and ENGEL, Circuit Judges.

PER CURIAM.

Plaintiff Leatha Benita Sims is a 16-year-old Negro, who in May 1973 was a student at Schaeffer Junior High School in Springfield, Ohio. Defendants William Waln and Max Launder were, respectively, principal and assistant principal of the school at that time.

This action arose out of an incident which occurred on May 14, 1973. On that date Miss Sims was ordered by her teacher to stay after school as punishment for a violation of school rules.[1] This form of discipline is known in the school as detention. Immediately after school Miss Sims went to the principal's office and requested that she not be required to remain after school on that day, stating that she had to babysit. She was unable, however, to reach her mother by telephone to verify her story.

Officials at Schaeffer Junior High also employ a type of punishment known as "corporal punishment", whereby a student is punished by imposition of blows on the buttock with a paddle, known as "cracks". The maximum number of cracks given a student under school policy is three. Ohio Rev.Code § 3319.41 [2] authorizes the principal of the school to impose such punishment.

Defendant Waln offered Miss Sims two cracks as an alternative punishment to detention. Miss Sims refused to accept the cracks and refused to remain after school. She fled from Waln's office and contact was made between her and Waln as he attempted to grab her. Miss Sims slipped to the floor and sustained a slight injury to her knee. No cracks were actually administered by defendants upon plaintiff on that day.

Plaintiff filed this action in the district court under 42 U.S.C. §§ 1983 and 1985, premising federal jurisdiction on 28 U.S.C. § 1343. She sought a declaratory judgment that O.R.C. § 3319.41 is unconstitutional on its face and as applied to her. She sought punitive and compensatory damages from defendants for injuries she allegedly suffered on May 14, 1973, and an injunction enjoining defendants from discriminating against Negro students in the infliction of corporal punishment.

Liberally construed, the complaint could be read as alleging basically four claims. The first three claims related to the constitutionality of O.R.C. § 3319.41. First, plaintiff claimed that the statute is unconstitutional because it authorizes corporal punishment, a *per se* violation of the Eighth Amendment prohibition against Cruel and Unusual Punishment. Second, she argued the statute unconstitutionally abridges a parent's First and Fourteenth Amendment right to bring up his child in the manner he sees fit by authorizing school officials to impose corporal punishment even though the parent might not consent. Third, she claimed the statute is unconstitutional on its face and as applied to her because it fails to provide for any Due Process Clause procedural guarantees before corporal punishment is imposed. The final claim was that corporal punishment was imposed at Schaeffer Junior High discriminatorily against her and other Negro students at the school in violation of the Equal Protection Clause.

■ The district judge held a full trial, hearing witnesses and taking testimony. He thereafter issued a memorandum opinion, 388 F.Supp. 543 (S.D.Ohio, 1974), in which he concluded that plaintiff's cause of action stated no substantial federal question under § 1983. Judgment was entered dismissing the action on the merits. While we disagree with the district court's conclusion that the plaintiff's federal claims are insubstantial, we nevertheless affirm its judgment dismissing the complaint on the merits and granting judgment for defendants.

The issue of "constitutional insubstantiality" was recently reviewed by the Supreme Court in the context of a § 1983 action

---

1. Waln testified that Miss Sims was detained either for cutting classes or for chewing gum.

2. Ohio Revised Code § 3319.41, in effect on May 14, 1973, when the incident in question took place, provided in relevant part:

   "A person employed or engaged as a teacher, principal, or administrator in a school, whether public or private, may inflict or cause to be inflicted, reasonable corporal punishment upon a pupil attending such school whenever such punishment is reasonably necessary in order to preserve discipline while such pupil is subject to school authority.

brought under § 1343(3), *Hagans v. Lavine,* 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974). There the court noted that in its previous interpretations of that doctrine it had found claims to be insubstantial only where they were "obviously without merit", "wholly insubstantial", or where "previous decisions inescapably render the claims frivolous." *Hagans v. Lavine,* 415 U.S. at 537, 538, 94 S.Ct. at 1379 (quoting prior cases). We are not aware of any Supreme Court decision specifically dealing with the type of claim presented here.[3] Further, *Dixon v. Youngstown City Board of Education,* C–73–1188Y (N.D.Ohio, July 23, 1975), an unreported decision in which a three judge district court upheld the constitutionality of the same statute, had not yet been handed down. These circumstances lead us to conclude that the federal claims presented in plaintiff's complaint, in the constitutional sense, were not so frivolous or insubstantial as to oust the district court of its jurisdiction to hear the case.

■ Plaintiff's first claim is that corporal punishment imposed by school officials is a *per se* violation of the Eighth Amendment prohibition against Cruel and Unusual Punishment, made applicable to the states through the Fourteenth Amendment. Other federal courts which have considered this claim have uniformly rejected such a contention. *Ingraham v. Wright,* 525 F.2d 909 (5th Cir. 1976) (*en banc*) *cert. granted,* —— U.S. ——, 96 S.Ct. 2200, 48 L.Ed.2d 815, 44 U.S.L.W. 3670 (1976), *Dixon v. Youngstown City Board of Education, supra, Ware v. Estes,* 328 F.Supp. 657 (N.D.Tex.) *aff'd* 458 F.2d 1360 (5th Cir. 1972). *Glaser v. Marietta,* 351 F.Supp. 555 (W.D.Pa.1972), *Sims v. Board of Education,* 329 F.Supp. 678 (D.N.M.1971). Plaintiff cannot contend that the policy followed at Schaeffer of imposing no more than three cracks is "excessive" in the constitutional sense, *cf.*

*O'Neil v. Vermont,* 144 U.S. 323, 339–340, 12 S.Ct. 693, 36 L.Ed. 450 (1892) (Field, J., dissenting), as there is no evidence in the record to support such a contention. Plaintiff's attack of the statute on Eighth Amendment grounds must therefore fail.

■ Plaintiff attacks O.R.C. § 3319.41 on two Fourteenth Amendment grounds. First, she claims the statute interferes with a parent's constitutional right to decide whether his child is to be subject to corporal punishment. The Supreme Court has long recognized the constitutional stature of parental rights to bring up their children. *Meyer v. Nebraska,* 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923), *Pierce v. Society of Sisters,* 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925). These parental rights are not absolute, however, *Prince v. Massachusetts,* 321 U.S. 158, 166, 64 S.Ct. 784, 88 L.Ed. 1090 (1943), and the use of corporal punishment is not forbidden simply because it interferes in some instances with the right of parental control. *Baker v. Owen,* 395 F.Supp. 294 (M.D.N.C.1975) (three judge court) *aff'd mem.* 423 U.S. 907, 96 S.Ct. 210, 46 L.Ed.2d 137 (1975). *Dixon v. Youngstown Board of Education, supra, Gonyaw v. Gray,* 361 F.Supp. 366 (D.Vt. 1973), *Ware v. Estes, supra.* Here, moreover, it appears from the record that on a previous occasion plaintiff's mother had consented to the imposition of corporal punishment upon plaintiff. We, therefore, find plaintiff's contention in this regard to be without merit.

■ Plaintiff's second Fourteenth Amendment claim is that the Ohio statute is unconstitutional because it provides no procedural safeguards which teachers and administrators must follow before imposing corporal punishment. We note that while some courts have held that a student has a

---

**3.** In *Baker v. Owen,* 395 F.Supp. 294 (M.D. N.C.1975) (three judge court) *aff'd mem.,* 423 U.S. 907, 96 S.Ct. 210, 46 L.Ed.2d 137 (1975), the Supreme Court summarily affirmed a district court judgment that a North Carolina statute authorizing corporal punishment was not unconstitutional on its face. Plaintiff there had raised many of the same issues presented in

the instant case. The *Baker* case was, of course, decided subsequent to the district court decision in this case. *Goss v. Lopez,* 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975) dealt with another aspect of school discipline, suspension from school. However, many of the claims presented here were in no way at issue there.

liberty interest in freedom from corporal punishment protected by the Fourteenth Amendment procedural guarantees, *Baker v. Owen, supra,* other courts have refused to find such a constitutionally protected interest. *Ingraham v. Wright, supra, Gonyaw v. Gray, supra. Cf. Goss v. Lopez,* 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975).[4]

We need not decide whether plaintiff had a constitutional right to be free from corporal punishment entitled to the procedural guarantees of the Due Process Clause. The failure of the Ohio legislature to explicitly provide such procedural safeguards does not render the statute unconstitutional on its face. *Baker v. Owen, supra.* The record in this case clearly reflects that the plaintiff was not subjected to corporal punishment during the incident in question. If she had a right entitled to the protection of Due Process Clause guarantees, such a right was not infringed here.

■ Appellant's final contention is that defendants engaged in an intentional practice of discriminatory use of corporal punishment against Negro students in Schaeffer Junior High solely on the basis of their race. The only evidence introduced by plaintiff to support her claim was statistical evidence for one year showing that a greater percentage of Negro and other minority students were subjected to corporal punishment during that year than were white students. In terms of absolute numbers, far more white students actually received corporal punishment, because whites constituted about 90% of the school population.

There was no showing that the discipline imposed here was more severe than that imposed upon white students for the same misconduct, or that the principal's actions

were in any way motivated by bias. Under such circumstances the district court's finding that the punishment was not discriminatorily imposed is not clearly erroneous.

The judgment of the district court is affirmed.

---

4. In *Goss v. Lopez, supra,* the United States Supreme Court held that high school students who under Ohio law could be suspended from school for up to ten days for misconduct, had liberty and property interests in remaining in school entitled to the protection of the Due Process Clause. Thus the court held that students could not be suspended without a hearing which comported with minimal due process guarantees. Four members of the court dissented, arguing that the infringement of the students' right to education was too slight and insubstantial to justify imposition of a constitutional rule. In view of the sharp division of opinion of the various justices on this matter, we express no opinion as to whether *Goss* should be extended to require that due process standards be met before corporal punishment is imposed. We note only that corporal punishment as imposed in Schaeffer Junior High is a less severe form of discipline than suspension from school.